721 S.E.2d 430

**GRAHAM LAW FIRM, P.A., Appellant,**

**v.**

**Mohamed MAKAWI, Individually and d/b/a International House of Pancakes, and MKKM, Inc., Respondents.**

**No. 27086.**

Supreme Court of South Carolina.

Heard Oct. 19, 2011.
Decided Jan. 17, 2012.

Edward L. Graham and Mary H. Watters, both of Graham Law Firm, of Florence, for Appellant.

Walker H. Willcox and E. Lloyd Willcox, II, both of Willcox, Buyck & Williams, of Florence, for Respondents.

Justice PLEICONES.

Appellant, Graham Law Firm (Graham), appeals the trial court's order granting respondents' motion to set aside default judgment on the grounds that the court lacked jurisdiction based upon inadequate service of process. Because we find that appellant was not given sufficient opportunity for discovery and cross-examination of witnesses on the matter of

authorization to accept service of process, we reverse and remand for further proceedings consistent with this opinion.

## FACTS

In 2007 Graham filed suit against Respondents MKKM, Inc., and Mohamed Makawi, individually and doing business as International House of Pancakes, seeking payment for professional services. Graham served both complaints on Makawi, who is MKKM's president and registered agent for service of process, by certified mail, return receipt requested, restricted delivery, at the IHOP location in Florence, South Carolina. The documents sent to Makawi individually were signed for by Kim Richardson, while those mailed to him as agent for MKKM were signed for by Ana Carvajal. The circuit court found that Edward Graham of Graham Law Firm received a phone call from Makawi in which Makawi acknowledged receipt of the summons and complaint and asked for copies of the itemized bill.

Neither Makawi nor MKKM filed an answer to the complaint, and Graham's motions for entry of default and default judgment were granted. Graham served a copy of the order granting default judgment by certified mail on Makawi and Makawi as registered agent of MKKM, and the return receipt was signed by [illegible] Makawi. In March 2009, counsel for respondents contacted Graham to request information about the judgment.

Thereafter, respondents filed a Rule 60(b), SCRCP, motion for relief from judgment alleging improper service based, among other arguments, upon the certified mail having been signed for by unauthorized persons. At the hearing on the 60(b) motion, the only evidence offered in support of the motion was an affidavit from Makawi in which he stated that he was the only person authorized to receive service of process for MKKM, IHOP, or himself individually; that Richardson was a bookkeeper for MKKM with no administrative duties; that he had never heard of Carvajal and that she had never worked for him or for MKKM; and that he had not been made aware of the lawsuit until more than a year after the default judgment was entered. Graham presented evidence of its efforts to serve the summons and complaint and notice of

default on Makawi as well as evidence that Carvajal had worked as a hostess at IHOP.

The trial court denied respondents' motion to set aside the default judgment, finding that Makawi had telephoned Graham acknowledging receipt of the summons and complaint in March 2007 and had received proper notice of the entry of default in May 2007; that Carvajal had worked at IHOP; and that Makawi's affidavit was "unconvincing under these circumstances." Respondents filed a Rule 59(e), SCRCP, motion to alter or amend the judgment and submitted a second affidavit from Makawi. Graham's brief in response included requests for discovery and cross-examination.

After reconsideration, the trial court issued an order granting respondents' motion. The court's order accepted the assertions of the second affidavit that Carvajal was not authorized to receive service of process on behalf of MKKM and that Richardson was unauthorized to receive it on behalf of Makawi individually. Graham then filed a Rule 59(e) motion to alter or amend the judgment, including a request for a ruling on the discovery request made in its brief in opposition to respondents' 59(e) motion, which the trial court denied.

Graham timely appealed the orders granting respondents' Rule 60(b) motion and denying Graham's Rule 59(e) motions. This matter was certified from the Court of Appeals pursuant to Rule 204(b), SCACR.

## ISSUES

1. Did the trial court err in holding that the service of process on respondents was not effective?
2. Did the trial court err when it accepted the contents of Makawi's second affidavit despite having found Makawi's first affidavit unreliable?
3. Did the trial court err when it failed to grant Graham's request for discovery and cross-examination?

## DISCUSSION

### I. Service of Process

■ The trial court's findings of fact regarding validity of service of process are reviewed under an abuse of discretion

standard. *Clark v. Key,* 304 S.C. 497, 500, 405 S.E.2d 599, 601 (1991).

Rule 4(d)(8), SCRCP, sets forth the requirements for effective service of process by certified mail in relevant part:

**Service by Certified Mail.** Service of a summons and complaint upon [an individual or corporate] defendant ... may be made ... by registered or certified mail, return receipt requested and delivery restricted to the addressee. Service is effective upon the date of delivery as shown on the return receipt. Service pursuant to this paragraph shall not be the basis for the entry of a default or a judgment by default unless the record contains a return receipt showing the acceptance by the defendant. Any such default or judgment by default shall be set aside pursuant to Rule 55(c) or Rule 60(b) if the defendant demonstrates to the court that the return receipt was signed by an unauthorized person.

■ As we have noted, "[w]hen the civil rules on service are followed, there is a presumption of proper service." *Roche v. Young Brothers, Inc.,* 318 S.C. 207, 211, 456 S.E.2d 897, 900 (1995). Once the plaintiff has demonstrated compliance with the rules, the defendant can rebut an inference that service was effected only by showing "that the return receipt was signed by an unauthorized person." Rule 4(d)(8), SCRCP.

■ The class of persons authorized to sign on behalf of defendants is narrow: "Actual appointment for the specific purpose of receiving process normally is expected and the mere fact a person may be considered to act as defendant's agent for some purpose does not necessarily mean that the person has authority to receive process." *Moore v. Simpson,* 322 S.C. 518, 473 S.E.2d 64 (Ct.App.1996). Service on an employee is effective when the employee has apparent authority to receive it on behalf of the employer. *See Richardson v. P.V., Inc.,* 383 S.C. 610, 682 S.E.2d 263 (2009) (holding that hotel receptionist had authority to receive service of process where she was only employee present in office, which represented to third parties that she was in charge).

■ An agent's high level of actual or apparent responsibility suffices to permit service to be effective as against the

principal. *See Richardson, supra; Roberson v. Southern Finance of South Carolina, Inc.,* 365 S.C. 6, 615 S.E.2d 112 (2005) (holding that service on clerical employee of registered agent was improper); *Burris Chemical, Inc. v. Daniel Construction Co.,* 251 S.C. 483, 163 S.E.2d 618 (1968) (finding that an acting general superintendent in charge of fifteen men was an agent upon whom service could be made). This Court has also held service on a corporate officer effective as against the corporation. *Roche, supra.*

■ The trial court ruled that Graham's attempt to serve the summons and complaint on respondents by certified mail was not effective because, although Graham followed the proper steps for service by certified mail, the respondents met their burden of demonstrating that the return receipts were signed by unauthorized persons and thus no effective service was made.

Graham contends that the trial court erred when it ruled that proper service on respondents was not effected, in part because it used the wrong legal standard, requiring specific authorization for receipt of service of process.

In this case, the return receipt for the summons and complaint served on Makawi individually was signed for by Richardson, an employee of MKKM who is described by Makawi as a bookkeeper with no administrative responsibility and by Graham as an office manager with substantial authority. Makawi asserts that he has never authorized Richardson to receive service of process for him individually. The return receipt for the summons and complaint served on Makawi as registered agent for MKKM was signed for by Carvajal, a hostess at the IHOP restaurant. Respondents describe Carvajal's position as an entry-level one entailing no managerial duties. The trial court, recognizing both actual and apparent authority as bases for finding effective service, found that Richardson and Carvajal were not authorized to receive service of process on behalf of respondents based upon Makawi's assertions to that effect in the second affidavit and the absence of evidence offered by Graham to establish that Richardson or Carvajal possessed apparent authority.[1]

---

1. As explained below, we find that the trial court wrongly denied Graham's request that he be allowed to look for such evidence and cross-examine witnesses on this issue.

Respondents argue that, as a matter of law, Richardson could not have been authorized to sign the return receipt on behalf of Makawi individually because South Carolina law permits service of process on an agent for a corporation but not for an individual, citing *Langley v. Graham*, 322 S.C. 428, 472 S.E.2d 259 (Ct.App.1996). *Langley* held that service of process by means of certified mail was ineffective when the return receipt was signed by the defendant's sister. The Court of Appeals noted that

Although the [Supreme] Court in *Roche* states Rule 4(d)(8) "does not require the specific addressee sign the return receipt," we think the Court intended to limit the force of the statement to service upon corporations. Service on a corporation may only be accomplished by service upon an authorized person; thus, a corporate defendant accepts service of process when a person authorized to accept service does so for the corporation. On the other hand, an individual ordinarily accepts service under the rule when he signs the return receipt. If the rule permitted acceptance by anyone who happens to pick up the mail, the requirement that delivery of the suit papers by certified mail be restricted to the addressee would have no meaning.

322 S.C. at 431 n. 2, 472 S.E.2d at 261 n. 2.

■ We now clarify *Roche*, which the Court of Appeals read too narrowly in *Langley*. A rule permitting certain persons to receive service of process on behalf of others does not imply that "anyone who happens to pick up the mail" can stand in for the defendant. As with corporations, the class of persons who may receive service of process on behalf of an individual is limited. Nevertheless, an individual is as competent as any other entity to confer authority on an agent. Rule 4(d)(1), SCRCP, itself contemplates service on the agent of an individual, permitting service "[u]pon an individual ... by delivering a copy to an agent authorized by appointment ... to receive service of process." [2]

2. In *Moore v. Simpson*, 322 S.C. 518, 473 S.E.2d 64 (Ct.App.1996), the court, after citing the language of Rule 4(d)(1) and 4(d)(3) permitting service on an authorized agent, found that no proper service took place because the plaintiffs failed to show that a receptionist was authorized to receive service of process for an attorney either individually or on behalf of the law firm.

Thus, although Richardson could have been authorized to receive service of process on behalf of Makawi, the trial court's finding that Richardson and Carvajal were unauthorized persons within the meaning of Rule 4(d)(8) is sufficiently supported by the evidence in the record—or, specifically, the lack of evidence in the record to rebut Makawi's affidavit. The trial court found that Graham had not offered "any evidence of declarations or conduct on the part of the [respondents] that could potentially give rise to apparent authority in Richardson or Carvajal." Thus, we cannot say that the trial court abused its discretion when it made this determination.

## II.  Reliability of Affidavit

■  Graham contends that the trial court improperly relied on respondents' assertions in Makawi's second affidavit that Richardson and Carvajal were unauthorized to receive service of process because the trial court found in its first order that Makawi's first affidavit was "unconvincing." Because this finding has not been appealed or amended, Graham argues it is therefore the law of the case.

This argument lacks merit. Rule 59(e) allows a court to reconsider its earlier ruling. Moreover, the substantive assertions that the judge found to be unconvincing in the first affidavit were either not repeated in the second affidavit or were portions on which the trial court did not rely when it granted respondents' Rule 59(e) motion. The result advanced by Graham would deny the fact finder's right to accept all, some, or none of the testimony of a particular witness. *See,* e.g., *Glover v. Columbia Hospital of Richland County,* 236 S.C. 410, 418, 114 S.E.2d 565, 569 (1960) ("The well-established rule in this state is that if there is any testimony whatever to go to the jury on an issue involved in a cause, or even if more than one inference can be drawn from the testimony then it is the duty of the judge to submit the cause to the jury. This is true, even if witnesses for the plaintiff contradict each other, or if a witness himself in his testimony makes conflicting statements.") (internal quotation marks and citation omitted). Graham would have us hold that, having found one affidavit unreliable, the trial court was precluded from accepting any statement from Makawi as reliable throughout the remainder of the proceedings. Thus, the trial court did not err in finding

some statements in Makawi's second affidavit credible despite having found that the first affidavit was not.

### III. Discovery and Cross–Examination

■ Graham further contends that the trial court erred when it failed to grant Graham's request for discovery and cross-examination in connection with respondents' Rule 59(e) motion. Graham contends that, in light of the determinative nature of the court's findings regarding jurisdiction, the court erred when it denied Graham an opportunity to fully explore the factual issues involved through further discovery and cross-examination of witnesses. We agree.

■ "Where important decisions turn on questions of fact, due process often requires an opportunity to confront and cross-examine adverse witnesses." *Brown v. South Carolina State Board of Education,* 301 S.C. 326, 329, 391 S.E.2d 866, 867 (1990) (citing *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970)); *see South Carolina Department of Social Services v. Holden,* 319 S.C. 72, 459 S.E.2d 846 (1995) (right to confrontation applies in civil context).

The Court of Appeals explained the application of due process concerns to issues of personal jurisdiction:

> When the plaintiff can show that discovery is necessary in order to meet defendant's challenge to personal jurisdiction, a court should ordinarily permit discovery on that issue unless plaintiff's claim appears to be clearly frivolous. However, where a plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by defendants, the court need not permit even limited discovery confined to issues of personal jurisdiction if it will be a fishing expedition. When a plaintiff offers only speculation or conclusory assertions about contacts with a forum state, a court is within its discretion in denying jurisdictional discovery.

*Sullivan v. Hawker Beechcraft Corporation,* 397 S.C. 143, 151–52, 723 S.E.2d 835, 839–40, 2012 WL 387874 at *3 (Ct. App.2011) (internal quotation marks and citations omitted).[3]

---

**3.** *Sullivan* dealt with minimum contacts analysis for out-of-state defendants, but the same reasoning applies to the question of whether a

In this case, Graham's claim of personal jurisdiction over Makawi and his corporation through service on their agents is not conclusory, frivolous, or attenuated. Kim Richardson, who signed the receipt for the summons and complaint sent to Makawi individually, may have had authority to accept them if she did serve as an office manager with significant authority as an employee of IHOP or by virtue of the services Graham alleges Richardson performed for Makawi personally.[4]

With regard to MKKM, Graham has claimed no greater status for Carvajal as an MKKM employee than that she was a hostess at IHOP for a few months. Even if it seems unlikely that further discovery will demonstrate that she had sufficient authority or responsibility to be deemed an agent for purposes of service of process on MKKM, Graham's claim that MKKM was properly served is not conclusory, frivolous, or attenuated, given that she was an employee of MKKM and signed the return receipt.

Not only has Graham made a sufficient showing to entitle it to discovery on the issue of jurisdiction, but it must receive a full and fair opportunity to be heard on the matter, because the findings with regard to service of process may determine the merits of the case in chief. *See Wetzel v. Woodside Development Limited Partnership*, 364 S.C. 589, 615 S.E.2d 437 (2005) (finding that an order granting a motion to set aside an entry of default for improper service effectively dismisses an improperly served party from the action); *Archangel Diamond Corp. v. Lukoil*, 123 P.3d 1187 (Colo.2005) (holding that a trial court's findings related to personal jurisdiction could later be preclusive). Because a finding that a party was not properly served for purposes of a motion to set

plaintiff is entitled to discovery in order to obtain evidence tending to show that the court has jurisdiction over an in-state defendant. The *Sullivan* court further noted that "a plaintiff is not required to assert he will be 'meritorious' on personal jurisdiction; rather, he must demonstrate enough facts to support a prima facie showing [of jurisdiction]." The plaintiff may allege the necessary facts in the complaint or present them by way of affidavit. *See Sullivan* at 152, 723 S.E.2d at 840, citing *Coggeshall v. Reproductive Endocrine Associates of Charlotte*, 376 S.C. 12, 16, 655 S.E.2d 476, 478 (2007).

4. We express no opinion on the question of whether employees of IHOP can be considered employees of Makawi for purposes of this dispute.

aside an entry of default judgment is binding with regard to the remainder of the litigation, such a ruling may "in effect determine[ ] the action" or "strike[ ] out ... [a] pleading in [an] action." S.C.Code Ann. § 14–3–330(a), (c).

In this case, if the court finds that no proper service was effected, Graham will be unable to dispute a statute of limitations defense.[5]  Thus, due process requires that Graham receive an opportunity to conduct adequate discovery on this question and confront adverse witnesses.

Respondents argue that Graham had an opportunity for discovery beginning with the respondents' motion for relief from the entry of default judgment that was filed on May 21, 2009, and failed to avail itself of it, not formally requesting an opportunity for discovery until its September 8 motion following the judge's order granting relief from the entry of default judgment on August 31.  Graham denies that it had reason to request discovery until the August 31 order because the only evidence presented by respondents to support the associated motion was the second affidavit, which it views as only a "broadened and embellished" revision of the first affidavit that the trial court had found unreliable.

Respondents cite *Richardson v. P.V., Inc., supra,* in support of their contention.  In *Richardson,* at the hearing on the appellants' motion to set aside an entry of default, they argued only defective service, asking that the court schedule a later hearing to consider setting aside the default on grounds of mistake, inadvertence, surprise or excusable neglect if the court found that service was not defective.  383 S.C. at 616–17, 682 S.E.2d at 266.  The appellants also indicated at the hearing that they did not believe they needed to present evidence on the good cause issue, and they did not seek a continuance to permit completion of discovery.  *Id.* at 618, 682 S.E.2d at 267.

Unlike the *Richardson* appellants, Graham did not bear the burden of production on this issue at this stage.[6]  Further, the

---

5.  Graham has conceded that if service was improper, no action was commenced within the applicable limitations period.

6.  After Graham established that it had performed all requirements of Rule 4(d)(8), the burden shifted to respondents to show that the receipts

record in this case is replete with instances of the respondents' delay and receipt of additional time,[7] and it would be inequitable to hold Graham to a strict standard on this issue when the respondents have had both ample time and the opportunity to withdraw and amend their own scant evidentiary submissions to conform to the evidence presented by Graham. Also unlike the *Richardson* appellants, Graham fully explained to the trial court its need to conduct discovery and cross-examine witnesses. Moreover, no hearing was held in connection with the respondents' Rule 59(e) motion at which Graham could have cross-examined Makawi or other witnesses. On this record, it cannot be said that Graham had a full and fair opportunity to be heard on an issue that may be determinative of its legal rights.

In light of this decision, we need not reach Graham's remaining arguments.

## CONCLUSION

We reverse the order of the trial court and remand the case for further proceedings consistent with this opinion.

**REVERSED AND REMANDED.**

TOAL, C.J., BEATTY, KITTREDGE and HEARN, JJ., concur.

---

were signed by unauthorized persons. *Roberson*, 365 S.C. at 10, 615 S.E.2d at 115.

**7.** Respondents' first motion for relief from default judgment was unsupported; the first affidavit was served in an untimely manner; and respondents failed to enter the motion for relief from default judgment until more than two years after they knew of the lawsuit (the trial court found that Makawi called Graham acknowledging receipt of the summons and complaint in March 2007).